**In re CITY OF WEST PALM BEACH, FLA.**

No. 8625.

Circuit Court of Appeals, Fifth Circuit.

April 14, 1938.

Paul W. Potter, of West Palm Beach, Fla., for City of West Palm Beach.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The new Municipal Bankruptcy Act, §§ 81–84, approved August 16, 1937, and found 11 U.S.C.A. §§ 401–404, was sought to be availed of by City of West Palm Beach, Fla., by a petition filed August 20, 1937. It was dismissed by the District Judge August 30, 1937, without any creditors' meeting having been called, on the grounds that the petition showed that the plan of composition proposed thereby had been offered by the petitioner and accepted by the majority of the creditors long before the passage of the act and not pursuant to it, and that the accepting creditors had been mostly settled with pursuant to the plan by giving them new bonds and so could no longer be counted as creditors favoring the plan as a bankruptcy composition. The City appeals.

The petition contains the allegations required by section 403(a) of the act. It exhibits the proposed plan which states that it is "made as of this first day of January, 1936." It offers new funding bonds for the City's floating debt and new refunding bonds for its old bonds, at a reduction of 25 per cent. in principal and at lower interest rates, with long-postponed maturities. It provides that separate tax levies for interest and sinking funds for the new bonds are to be provided. The petition states that the holders of more than 90 per cent. of the City's debt entered into this plan, and that creditors "owning not less than 51% in amount of the securities affected by the aforesaid plan, excluding such securities owned, held and controlled by petitioner have accepted said plan in writing." But the petition alleges further that the City had passed its ordinances to put the plan into effect, had prepared and had executed the necessary funding and refunding bonds, and that they had been validated and confirmed by proper court decree on November 18, 1936; and "Said City has issued $10,031,-250 of the aforesaid refunding bonds of 1936, leaving $1,561,125 of said refunding bonds to be exchanged for $2,081,400 of said City's old indebtedness; and has also issued $287,000 of its funding bonds of 1936, leaving $206,000 of its funding bonds to be exchanged for $274,664 of its outstanding floating debt." The purpose of the bankruptcy thus appears to be to force the holders of the $2,081,400 of old bonds and of $274,644 of the floating debt to take the same settlement which the other creditors have taken.

The Municipal Bankruptcy Act speaks uniformly of a "plan of composition." In bankruptcy matters composition has a special meaning, to wit, a settlement or adjustment which is enforced by the court on all creditors after its acceptance by a required majority. A proposed adjustment out of court is not a plan of composition, but it may become one by being presented to the court. That the present adjustment was proposed and largely accepted before the act was passed, and of course not as a plan of composition, would, if it remained executory, possibly not prevent its presentation for enforcement under the act. This was done under the former act in the case of In re Imperial Irrigation District, D.C., 10 F.Supp. 832, though it appears that the bondholders' committee there ratified their acceptance after the act took effect. The present act, section 403(a), requires that the plan be filed with the petition, and that the owners of 51 per cent. of the securities affected be stated to have accepted it in writing, and that a list of creditors and their addresses be filed showing separately those accepting the plan. Whether the plan must have been offered and accepted as a plan of composition rather than as a plan of voluntary adjustment we need not decide, since the plan with its acceptance became incapable of presentation as a composition because it had been largely executed. It appears from the petition that more than a majority of the floating debts involved in the plan had been exchanged for new funding bonds and about five-sixths in amount of the old bonds had been exchanged for new bonds. The owners of these were no longer acceptors of an executory plan, but had been fully settled with under it and no longer had any direct interest in it. They could not fairly be counted as voters before the court on the propriety of the plan. Of course they would wish the nonacceptors to be forced to scale their debts as they themselves had done. They could no longer have an open mind as to whether, in the light of developments, the plan was a good one or a bad one. The binding of a minority by a majority having the same interests was discussed as respects corporate reorganizations in Texas Hotel Securities Co. v. Waco Development Co., 5 Cir., 87 F.2d 395, and Continental Ins. Co. v. Louisiana Oil Ref. Corp., 5 Cir., 89 F.2d 333. The importance of identity of interest is there stressed. We do not think the creditors of West Palm Beach who have already irrevocably scaled their debts can be counted either in the two-thirds finally to be needed, nor as preliminary acceptors of the scaling plan offered as a composition. Perhaps the view can be taken that the old bonds and floating debts not exchanged for new bonds are a separate class of securities, and if 51 per cent. in amount of their present holders now accept a plan for their scaling it can be put through as a composition. The act, section 403(b), seems to forbid making into a separate class debts "payable without preference out of funds derived from the same source," but it may be that the special and separate tax levies for the new bonds amount to a sufficiently different fund. It would be premature to rule the point. As the case was made by the petition there was no plan accepted by 51 per cent. of the securities to be affected, but a plan the acceptors of which had converted themselves into holders of other securities which are not to be affected. The petition was properly dismissed.

Affirmed.