## In re WICHITA FALLS & SOUTHERN RY. CO.

### No. 902.

District Court, N. D. Texas, Wichita Falls Division.

Dec. 20, 1939.

Bullington, Humphrey & King, of Wichita Falls, Tex., proposing.

Jules F. Mayer, of Dallas, Tex., opposing.

Before HUTCHESON, Circuit Judge, and WILSON and ATWELL, District Judges.

ATWELL, District Judge.

On November 17th, 1939, there was presented to me the petition of the above-mentioned railway, for adjustment, pursuant to Chapter 15, an amendment to the Bankruptcy Act, approved July 28, 1939, 11 U.S.C.A. § 1200 et seq.

The above mentioned three-judge court was immediately assembled, which court approved the plan, in the sense required by the statute, and ordered notices to all interested parties returnable on December 20th, 1939.

Upon the hearing so fixed, the contention is made by a very small minority of the bondholders, that because some have already accepted and they have not, that, by this very action of acceptance and non-acceptance, two classes have been created —that is, a class of acceptors, and a class of non-acceptors.

The contention seems to answer itself. It is a suggestion without weight, and without even plausibility.

There are $729,000 in bonds. There is no other indebtedness. This amount in bonds is represented by seven hundred and twenty-nine bonds; thirteen of the same have not accepted, nor agreed to the arrangement.

The same contention was made in Re Baltimore & Ohio Railway Co., D.C., 29 F.Supp. 608. It was the first case under this statute. Sec. 700 et seq., 11 U.S.C.A. § 1200 et seq. That three-judge court, 29 F.Supp. at page 623, said, "This argument seems highly technical rather than substantial in relation to the large and important case here presented. But in addition we consider the contention unsound."

It will be noted that all the bonds in the present case are of the same issue, same rate of interest, same amount, same due date, and with the same security and privileges. The statute fixes the percentage of acceptances that shall ripen the plan and justify its approval. If we put into the statute the contention of the objectors, that the fact of objection creates a new class, we shall ingraft a new provision of percentages before a plan can fruit.

The Congress would hardly have worded the statute in the way we find it, if it had been intended that those who object are, themselves, to become a class, and that a certain percentage of the objecting class shall be secured before a plan may be approved. That, upon its face, would defeat any arrangement and make ridiculous the highly important legislation.

14 Corpus Juris Secundum page 1194, speaks of "classification" and expresses the thought that it is indulged in, as applying to legislation, when it may be made with reference to similarity, situation, circumstances, requirements, and, convenience best to serve the public interest. It suggests that it may have two meanings, one primarily signifying a division required by statute, fundamental and substantial, and, the other, secondary, signifying an arrangement, or, enumeration adopted for convenience only. Depending upon the purpose and context of the particular statute, the word has been defined as meaning a characterization through the selection of some quality, or, feature. Cf. Vallette et al. v. City of Vero Beach, Florida, 5 Cir., 104 F.2d 59.

We have been unable to find any learning that would justify either the "classification," or, the contention made.

The other objection presented to us, is that Kell, who is a large owner of the bonds, was active in the affairs of the road and discontinued the preservation of the sinking fund for the retirement of the bonds; that this was done so that he could buy them at a reduced rate. The testimony indicates that the provision with reference to the sinking fund was complied with under Kell's management. When the M. K. & T. took over the property, it discontinued the practice, and when the property was returned it was not resumed. It also indicates that Kell's purchases of the bonds have been made at prices above market quotations. There seems no support for either contention.

Prior to April 1, 1939, the petitioner secured the approval of the Interstate Commerce Commission to the plan of adjustment of maturity date from January 1,

1938, to January 1, 1948. Before that assents of more than two-thirds of the aggregate amount of the bonds affected by the plan had been secured, and more than three-fourths of the aggregate had agreed, as already indicated, at the time of the hearing before us.

The following findings and judgment are made:

On this, the 20th day of December, A. D. 1939, pursuant to an order entered herein on November 17, 1939, came on for hearing the plan of adjustment proposed by the petitioner, pursuant to Chapter XV of the Act of Congress entitled "An Act to establish a uniform system of bankruptcy throughout the United States," said Chapter XV thereof being approved July 28, 1939, 11 U.S.C.A. § 1200 et seq., and the Court after due consideration of said petition, and after hearing the evidence of the petitioner, makes the following findings:

(1) That the notices provided for in said order of November 17, 1939, both in person and by publication have been given to all security holders affected by the plan.

(2) That the holders of the first mortgage bonds of the petitioner are the only creditors affected by the plan, and that at the time of the filing of the said petition the plan of adjustment had been assented to by not less than two-thirds in amount of the holders of said first mortgage bonds.

(3) That at the time of the hearing hereon, the holders of more than three-fourths of the principal amount of the bonds affected by the plan have accepted the plan by executing the extension agreement proposed by said plan.

(4) That the extension agreement, after due consideration of the probable earnings of the property, in the light of its earnings experience and of such changes as may reasonably be expected,—

(a) Is in the public interest and in the best interest of each class of creditors and stockholders;

(b) Is feasible, financially advisable, and not likely to be followed by the insolvency of the corporation, or by need of financial reorganization or adjustment;

(c) Does not provide for fixed charges (of whatsoever nature including fixed charges on debt amortization of discount on debt, and rent for leased roads) in an amount in excess of what will be adequately covered by the probable earnings available for the payment thereof;

(d) Leaves adequate means for such future financing as may be requisite;

(e) Is consistent with adequate maintenance of the property;

(f) Is consistent with the proper performance by the Company of service to the public as a common carrier, and will not impair its ability to perform such service.

(5) That the petitioner is not in need of financial reorganization of the character provided for under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205.

(6) That the petitioner's inability to meet its debts, matured or about to mature, is reasonably expected to be temporary only.

(7) That the plan is fair and equitable as an adjustment, and affords due recognition to the rights of bondholders and stockholders.

(8) That all corporate action required to authorize the execution of the plan has been duly taken.

(9) That the petitioner has not done any act or failed to perform any duty which would be a bar to the discharge of a bankrupt, and that the plan and acceptance thereof are in good faith, and have not been made or procured by any means, promises or acts forbidden by said Chapter XV of the Act.

(10) That there has been a full disclosure to the court of all expenditures in the way of expenses, fees or compensation of any character, and the court finds the same to be fair and reasonable.

(11) That there has been a full disclosure of the stock ownership of the petitioner, and who constitutes the Board of Directors and officers of the petitioner, and the court finds that it is in the best interest of the bondholders and consistent with public policy that said Board of Directors and officers of the petitioner remain in control of the petitioner.

On this, the 20th day of December A. D. 1939, pursuant to an order entered herein on November 17, 1939, came on for hearing the plan of adjustment proposed by the petitioner, pursuant to Chapter XV of the Act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States", said Chapter XV thereof being approved July 28, 1939, 11 U.S.C.A. § 1200 et seq., and came the petitioner by its counsel, and came also interveners Orian M. Steelman and Marshall E. Birkins by their counsel, and the Court after hearing the evidence, and

the argument of counsel, is of the opinion that the plan of adjustment proposed by the petitioner, to wit; an extension agreement dated May 15, 1937, wherein and whereby the first mortgage bonds of the petitioner in the aggregate principal amount of $729,-000, are extended from January 1, 1938 to January 1, 1948, should be approved and confirmed, and it is hereby so ordered.

It is further ordered, adjudged and decreed that this order shall be binding upon the petitioner and upon all of said bondholders, and the petitioner be and hereby is given full power and authority to, and shall put into effect and carry out said plan of adjustment and the orders of this court.

It is further ordered, adjudged and decreed that until the further orders of this court all actions or proceedings now pending to enforce any right against the petitioner or against the property of the petitioner by any bondholder affected by this plan, whether for the enforcement of any claim, or for the appointment of receivers in equity, be and they are hereby stayed, soever, and wheresoever situated, located and all persons, firms or corporations whator domiciled, be and they hereby are restrained and enjoined, pending the further orders of this court, from instituting or prosecuting any proceedings to enforce any right against the petitioner or its property.

It is further ordered, adjudged and decreed that the motion for a continuance made by the interveners be, and is, hereby overruled.

This court reserves full right and jurisdiction to make from time to time such further orders amplifying, extending or limiting this order as to it at any time may seem proper.