## AMERICAN NAT. BANK OF NASHVILLE, TENN., v. CITY OF SANFORD, FLA., et al.

### No. 9369.

Circuit Court of Appeals, Fifth Circuit.

May 31, 1940.

Rehearing Denied July 8, 1940.

F. A. Berry, of Nashville, Tenn., J. Blanc Monroe, of New Orleans, La., and Stuart B. Warren and Geo. W. Wylie, both of St. Petersburg, Fla., for appellant.

Fred R. Wilson, of Sanford, Fla., Melvin H. Siegel, Sp. Asst. to Atty. Gen., and Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellees.

Robert J. Pleus, of Orlando, Fla., amicus curiæ.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is from an order rejecting appellant's objections to, and denying its motion to dismiss, the petition in bankruptcy for composition filed by the City of Sanford, Florida, under Section 83, sub. j of the Bankruptcy[1] Act, 11 U.S.

---

[1] "The partial completion or execution of any plan of composition as outlined in any petition filed under the terms of this act [title] by the exchange of new evidences of indebtedness under the plan for evidences of indebtedness covered by the plan, whether such partial completion or execution of such plan of composition occurred before or after the filing of said petition, shall not be construed as limit-ing or prohibiting the effect of this act [title], and the written consent of the holders of any securities outstanding as the result of any such partial completion or execution of any plan of composition shall be included as consenting creditors to such plan of composition in determining the percentage of securities affected by such plan of composition."

C.A. § 403, sub. j. This showed among other things that on February 1, 1937, with the consent of the holders of approximately 87% of its bonded indebtedness, the city had adopted a plan for the composition and adjustment of its indebtedness, the plan providing for the issuance of refunding bonds, Series A and Series B, to be exchanged for outstanding bonds; that on the 16th of March, 1937, petitioner secured judicial validation of its refunding bonds, and that, except as to a small portion of its original bonds, 231,000 as to Series A and 15,000 as to Series B, it has already procured the exchange of refunding bonds therefor. Alleging; that because of the pendency of this plan and its incompletion as to a small portion of the bonds, and the confusion the resulting situation has, caused, petitioner has found it necessary, in order to complete said plan of composition, to apply for relief under Chapter 9, Section 83, sub. j, of the Bankruptcy Act as amended, 11 U.S.C.A. § 403, sub. j; that it has secured and attaches the written consents to the plan, of creditors of petitioner owning not less than 51% of the securities affected by the February 1, 1937, plan, and the filing of this petition in completion thereof. There was a prayer; that the petition be approved as properly filed; that an order be entered fixing a time and place for a hearing, and for notice to the creditors; that there be an interlocutory decree making the plan temporarily operative and a final decree approving and confirming it. There was an order approving the filing of the petition, directing notice to the creditors, appointing a Special Master to receive and file claims, and ordering creditors to file their proof of claims with the Master.

American National Bank of Nashville, Tennessee, and two others, appeared, by motion, to dismiss the petition as unauthorized by the Bankruptcy Act because the plan proposed is not a plan of composition within its purview, but is a mere voluntary plan no longer executory, but fully executed as to all of the consenting bondholders holding refunding bonds. There was an order that "it appearing to the court that objecting creditors had raised constitutional and other legal questions which the court deems should be determined in advance of a hearing on the merits, they be referred to the Special Master for finding and report." Thereafter the Master having found that the petition was within the amendatory statute, that the statute was constitutional and that objector's motions to dismiss should be denied, the District Judge, on exceptions to the report, affirmed the Master's findings and recommendations and denied the motions to dismiss the petition. The bank appealed and is here presenting three points against the order. One, that the court in sustaining the petition as validly filed and overruling its motion to dismiss the order, necessarily gave a retrospective effect to the amendment which it was not intended to and did not have. Two, that the amendment as well as the original act deals with and only with, securities affected by the plan of composition proposed, and the consenting bondholders, holders of refunding bonds are not entitled to be counted as acceptors because having already accepted the refunding bonds, they are not and cannot be affected by the plan since it does not propose to adjust or modify them materially or indeed at all. The third point is that if the amendment purports to authorize the modifying or affecting of appellant's bonds by the consents of persons who have irrevocably scaled their debts and now hold refunding bonds which are not to be "adjusted or modified" materially by the composition plan the petition proposes, it violates the Fifth Amendment and is invalid. For, by permitting the consents of persons not similarly situated with it, that is, persons who have voluntarily scaled their bonds to compel appellant to also scale its bonds, would deprive it of a right vested in it to hold its bonds unscaled under the improved conditions already effected by the voluntary consenting.

█ That the amendment was intended to reach and provide a remedy for the precise situation in which the City of Sanford finds itself, we think there can be no doubt. From the report of the Committee of the Judiciary accompanying H. R. 10,753,[2] it plainly appears

---

[2] "The necessity for the amendment arises by virtue of the decision of the Circuit Court of Appeals, Fifth Circuit on April 14, 1938, in the West Palm Beach, Florida case, where it was held that the act permits only plans of composition which are wholly executory, and that evidences of indebtedness already ex-

that it was passed to meet the situation dealt with in our opinion in Re City of West Palm Beach, Florida, 5 Cir., 96 F.2d 85. We think it equally clear that the amendment, if valid, is effective to meet and provide a remedy for that situation. It declares that the fact that the "partial completion or execution of any plan of composition occurred before the filing of the petition, shall not be construed as limiting or prohibiting the effect of this act" and it specifically provides "the written consent of the holders of any securities outstanding as the result of any such partial completion or execution of any plan of composition shall be included * * * in determining the percentage of securities affected by such plan." It would be difficult to employ plainer language. We therefore reject as wholly without merit appellant's first and second contentions that the amendment was not intended to, and does not in terms, authorize the filing and, if the conditions of the act are met, the approval of the voluntary plan, as a plan of composition in bankruptcy.

Its third point, that as so construed, the act must be held unconstitutional as to it, as depriving it of vested rights, is, we think, no better taken. For nothing in the course of what the city and assenting bondholders have done under the voluntary plan, has in law conferred upon appellant a vested right to require the city and the assenting bondholders to continue, for appellants' benefit, to consent to the plan in the face of appellant's failure and refusal to join in.

If the city and the assenting bondholders, because of failure to secure full consenting, concluded to revoke the plan and to restore the bonded indebtedness to its original condition, it could hardly be contended we think, that appellant could assert a vested right to prevent their doing so. Indeed, such a contention would be running the theory of vested rights into the ground. How can it be any

better contended that appellant has a vested right to prevent Congress from extending to the city and assenting bondholders the aid of the bankruptcy court to bring their voluntary plan or such modification of it as may be decided upon, to final completion.

We are not concerned here with the rights of assenting bondholders who resist efforts to change the contract evidenced by the refunding bonds. They are not complaining and certainly appellant cannot complain for them.

Looked at in this way, the hardship and injustice of which appellant makes so much, that its securities are being scaled down by the consents of those who have already agreed to the scaling of their own, and thus appellant is made the victim of the arbitrary will of persons not similarly situated, is seen in its true light as not a hardship or injustice upon appellant at all, but quite the contrary. It is seen as a reasonable and effective provision enabling the city to enter with its bondholders upon consideration in the bankruptcy court of the plan of composition now for then as of the date when the voluntary plan was first proposed. So viewed, the amendment is brought directly within the principle on which compositions both private and public have been affirmed as valid, that where a sufficient number of those similarly situated with regard to the composition have approved it, no-one's rights can be or have been, constitutionally impaired. And appellants, in pressing their arguments against the result attained here, fully recognize this principle. They say that those who have already agreed to the plan are dissimilarly situated from those who have not, and their consents to it are therefore to be regarded not as a decision as to what is in the interest of all, but as a pressure upon those, who by the consents of others have become better situated, to compel them to surrender the preferential position the consents have conferred.

changed under the plan, prior to the filing of the petition, could not be included in computing the necessary percentage of securities held by consenting creditors to declare the plan operative.

"II. R. 10,753, would permit the court to include new refunding bonds already exchanged under the plan of composition when figuring the percentage of consenting creditors, regardless of whether such

exchange was completed before or after the filing of the petition.

"In the West Palm Beach case about 85% of new bonds had been exchanged prior to filing the petition. The plan cannot be enforced under the Circuit Court of Appeals case unless 66⅔% of the remaining 15% give their approval, thus effectively preventing the operation of the act of 1937."

If the voluntary plan had in terms provided that it would be counted fully completed and closed after a certain number of assents had been secured and the city were attempting under the act to reopen it, there might be some basis for appellant's claim of a vested right. We say might be, because even in that case, it is difficult to see just how appellant could have a vested right to require the continuance of what the city and other bondholders had voluntarily done and now were wanting to undo. But however that may be, the plan in question here was not completed. It was still open. Bondholders were still consenting and could consent until all had come in and we think it wholly unsound to say that thus open, Congress exceeded its bankruptcy powers in providing in effect that the plan thus open and continuing, could be presented and considered now as of the time of its inception, and more unsound to claim that in making it thus retroactive, Congress deprived appellants of a vested right in a condition which it not only had not agreed, but had persistently refused to agree, to.

There can be little doubt that if the voluntary plan had been proposed and many had consented to receive but none had yet received refunding bonds, it would be entirely competent for Congress to provide that the persons already consenting could be counted in the compulsory plan should a petition for composition be filed.

It is difficult to see how appellant's rights are any more vested, by the taking of the refunding, in lieu of the original bonds, than they would be if there were only an agreement to take them. Looked at in this light and construing the act as one declaring that as long as the plan is open the consents of persons in any stage of consenting, whether having merely agreed to accept or having accepted refunding bonds, shall be counted in the consummation of the plan, appellant's difficulty comes we think from its assumption that it acquired a definite vested right when the refunding bonds were accepted. Nothing in the acceptance prevents the city and the acceptors from undoing the whole plan. Without a vested right to require that the acceptances remain unchangeable appellant is without standing to complain of the consenting now for then, of those who as voluntary consentors, have taken refunding bonds.

The orders appealed from were rightly entered. They are affirmed.[3]

Affirmed.

---

[3] Cf. Vallette v. City of Vero Beach, 5 Cir., 104 F.2d 59; Campbell v. Alleghany Corp., 4 Cir., 75 F.2d 947; In re Baltimore & O. R. Co., D.C., 29 F.Supp. 608; In re Wichita Falls & Southern Ry. Co., D.C., 30 F.Supp. 750; Paramino Lumber Company v. Marshall, 60 S.Ct. 600, 84 L.Ed. ——; Welch v. Henry et al., 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142. See also, In re Drainage Dist. No. 7, 25 F.Supp. 372, 378, 379, D.C.E.D.Ark., affirmed sub. nom. Luehrmann v. Drainage Dist. No. 7, 8 Cir., 104 F.2d 696; In re Merced Irr. Dist., 25 F.Supp. 981, 985, D.C.S.D. Calif.; In re Lindsay-Strathmore Irr. Dist., 25 F.Supp. 988, 992, D.C.S.D. Calif.; In re Corcoran Irr. Dist., 27 F. Supp. 322, 327, 328, D.C.S.D.Calif.