## WERTZ v. VILLAGE OF SOLON, OHIO.
### No. 9848.

Circuit Court of Appeals, Sixth Circuit.
Feb. 26, 1945.

Writ of Certiorari Denied June 4, 1945.
See 65 S.Ct. 1412.

R. A. Argabright, of Dayton, Ohio (R. A. Argabright, of Dayton, Ohio, and Carl

64

F. Shuler, of Cleveland, Ohio, on the brief), for appellant.

Ralph W. Jones, of Cleveland, Ohio, for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Village of Solon, Ohio, being in default in payments of interest and principal on its Street Improvement Bonds, a resolution was passed by the Village Council, approving a refunding plan through the exchange of 25-year bonds, to be issued pursuant to the relevant sections of the Ohio General Code §§ 2293-5p to 2293-5u, upon the receipt of consent from the holders of not less than 75% of any issue of bonds then outstanding. The refunding bonds were to be exchanged for outstanding bonds at their face value. Interest on outstanding bonds was to be paid up to and including December 1, 1933, at the stated interest rate; but all other interest on outstanding bonds was to be cancelled. However, the plan provided that, at its option the Village could, upon receipt of consent of 51% of its bondholders, file a petition in the federal district court, praying for a readjustment of its debts, pursuant to the Bankruptcy Act of 1938, 11 U.S.C.A. § 401 et seq., and in such proceeding should file the plan and such amendments as might be approved in writing by the Ohio Municipal Advisory Council. The holders of approximately 95.5% of the outstanding bonds consented to the plan and exchanged their original bonds for the refunding bonds.

The statutes of Ohio governing the refunding of indebtedness, such as was undertaken in this case, provide, among other matters, for the re-assessment of the properties on which the original assessments were levied to include the unpaid balance of the original assessment and any interest not cancelled pursuant to the plan. The statute also preserves the priority of lien of non-consenting bondholders, as appears from the following provision:

"In order to preserve and protect the lien of the non-consenting bondholders, the funds collected each year on such reassessments shall be pledged first for payment of any amounts due or to become due on interest and principal on bonds of the original issue, whether matured or immatured, the holders of which have not consented, until the amount so collected equals the amount which would have been collected under the original assessment, and applicable to such bonds not refunded and in consenting to any such refunding of bonds, the consenting bondholders shall be conclusively presumed to have consented to such preference." § 2293-5s.

In accordance with the plan, which included the above statutory provision by reference, a fund was set up by the Village for the payment of the interest and principal to the non-consenting bondholders and for the protection of their lien. It further appears that two non-consenting holders of bonds received 6% interest in 1940, one payment being in the amount of $60, and the other, $90. The aggregate of non-consenting bondholders represented 4.51% of the bonded indebtedness, or $18,200. Appellant was one of those who did not consent to the above plan.

However, some time afterward, because of the refusal of such bondholders to consent to the plan and come in on an equal basis with the others, the Village of Solon secured the approval of the proper state authorities and filed a petition in the district court for confirmation of the plan as a composition of its indebtedness, pursuant to Chapter IX of the Bankruptcy Act of 1938, 11 U.S.C.A. § 401 et seq. The non-consenting bondholders then filed a motion to dismiss the petition; whereupon, a Special Master was appointed who, after an extensive hearing, recommended that the motion to dismiss be overruled and that the Village of Solon be authorized to carry out the proposed composition plan, under the bankruptcy statute. The district court adopted the Master's report and confirmed the plan.

On appeal, it is contended that the district court had no jurisdiction to confirm the plan, inasmuch as it had already been undertaken pursuant to the provisions of the Ohio statutes heretofore mentioned, and that it had been fully executed and consummated before the petition under the Bankruptcy Act was filed. It is argued that by reason of the exchange of 95.5% of the original bonds for the refunding bonds on the part of the other bondholders, in accordance with the provisions of the plan, and the setting up of a fund to pay the non-consenting bondholders, and to preserve their lien, together with the payment of the above-mentioned interest, the non-consenting bondholders thereby acquired a

vested right to the preservation of their lien, under the Ohio statute above quoted. Appellee contends that the voluntary plan had not been fully executed, and that the district court was, therefore, authorized to enter its decree by virtue of 11 U.S.C.A. § 403, sub. j, which provides as follows:

"The partial completion or execution of any plan of composition as outlined in any petition filed under the terms of this title by the exchange of new evidences of indebtedness under the plan for evidences of indebtedness covered by the plan, whether such partial completion or execution of such plan of composition occurred before or after the filing of said petition, shall not be construed as limiting or prohibiting the effect of this title, and the written consent of the holders of any securities outstanding as the result of any such partial completion or execution of any plan of composition shall be included as consenting creditors to such plan of composition in determining the percentage of securities affected by such plan of composition."

█ The foregoing statutory provision clearly appears to have been intended to reach, and provide a remedy for, the precise situation that arose in the instant case, and authorized the filing and approval, if the conditions of the Act were met, of the voluntary plan, as a plan of composition in bankruptcy.

Nothing that was done by the Village and the consenting bondholders under the voluntary plan, gave appellant a vested right to require them to continue their consent for his benefit, in view of his failure and refusal to join therein; and if they had concluded to revoke the plan and restore the indebtedness to its original condition, appellant would have no vested right to prevent such action. The voluntary plan did not provide that it would be considered fully completed and closed after any given number of consent agreements had been secured; bondholders could still consent at the time the petition in these proceedings was filed; and nothing in the consent agreements prevented the Village and the consenting bondholders from setting the whole plan aside, as far as appellant was concerned. The Special Master and the district court found that the voluntary plan was only partly completed or executed at the time the petition in the bankruptcy proceedings was filed, and their findings are supported by the evidence. This enabled the district court to entertain the proceedings and to confirm the plan as a composition of indebtedness under 11 U.S.C.A., § 403, sub. j.

In the foregoing, we follow the reasoning of the court and the disposition of identical issues in the cases of American National Bank of Nashville, Tenn. v. City of Sanford, Fla., 5 Cir., 112 F.2d 435, and Davis et al. v. City of Homestead, Fla., 5 Cir., 112 F.2d 438. Moreover, evidence that the plan was not, and had not been fully executed prior to the filing of the petition in the bankruptcy proceedings, is found in § 2293-5p(a) of the General Code of Ohio, enacted in 1941. This section provides that any political subdivision which had formulated and presented any plan for the refunding of all or not less than 75% of its bonded indebtedness, pursuant to the provisions of § 2293-5p and related sections of the General Code here applicable, and had, prior to January 1, 1941, "inaugurated" such refunding plan by the issuance of refunding bonds to the extent of not less than 75% of the amount embraced in such a plan under § 2293-5p, as in force prior to January 1, 1941, "may at any time obtain and receive additional consents under such plan and may authorize the issuance and may issue and exchange the remainder of such refunding bonds in the method provided in such plan and may proceed and carry forward the issuance of such bonds, the proceedings for which have been so inaugurated prior to January 1, 1941." Under the terms of this section, the plan of appellee would remain open indefinitely, or until all of the original bonds had been exchanged.

In seeking to reverse the judgment of the district court, appellant relies upon the case of Wright v. City of Coral Gables, Fla., 5 Cir., 137 F.2d 192, affirmed, per curiam without opinion, by an equally divided court, 321 U.S. 753, 64 S.Ct. 779. However, that case is to be distinguished. There, the voluntary plan had been abandoned and the municipality had subsequently dealt with various creditors on the basis of voluntary and preferential settlements. It was said that, under these circumstances, a proceeding brought by the city to compel acceptance of such plan by non-consenting creditors, was an entirely new proceeding and in no sense a proceeding under the statute for the completion of that plan. Furthermore, it was held

that the city, in requesting consent of holders of its refunded securities to a plan for composition of creditors, made it plain that the consents were not requested as a part of the plan but were to be used to bludgeon into submission those with whom the City had not been able to make settlements satisfactory to itself and that, therefore, the plan was not filed in the good faith required by statute, and the necessary consent agreements required to compel acceptance of the plan, were not thereby obtained.

■ In the instant case, the Special Master found that the plan was fair, equitable, and for the best interests of the creditors, and did not discriminate unfairly. in favor of any creditor or class of creditors; that the offer of the plan and its acceptance were in good faith; that the petitioner was authorized by law to take all action necessary to carry out the plan; that it had been accepted and approved as required by 11 U.S.C.A., § 403, sub. e; and that it complied with 11 U.S.C.A. § 401, et seq. All of these conclusions were sustained by the district court, and were supported by the evidence. Appellant did not oppose the petition on grounds of unfairness, discrimination, or bad faith, but only for the reasons heretofore mentioned. With reference to the proof of the interest payments that were made to the two non-consenting bondholders, there is no evidence that these were preferential, or made pursuant to a settlement, or in bad faith, or with the object of unfairly discriminating between creditors. Because of the foregoing considerations, the Wright case is, therefore, not applicable to the issues presented in this controversy.

■ One other issue remains for disposition. The district court allowed the amount of $2,148.85 for fees to the Special Master, the attorney for the petitioner, and for the other expenses of the proceedings. On appellee's motion, the court apportioned these expenses among the non-consenting bondholders, in proportion to the amount of bonds held by each. The court acted under 11 U.S.C.A. § 403, sub. b, which provides that the district judge may allow reasonable compensation for the services of such Master, and the actual and necessary expenses incurred in connection with the proceedings, including compensation for services rendered and expenses incurred in obtaining the deposit of securities and the preparation of the plan,

whether such work may have been done by the petitioner or other representatives of creditors. It is further provided that the court may allow reasonable compensation for the attorneys or agents of any of the foregoing, and may apportion the cost so determined, among the parties to the proceeding, "as may be just."

Appellant insists that it is unjust, and, therefore, in violation of the statute, to hold the non-consenting bondholders liable for all of the costs and expenses of the proceedings on the petition in the bankruptcy matter, and that most of these costs would have been incurred whether such bondholders opposed the petition or not. This latter contention is doubtful, and, in any event, its accuracy is not ascertainable from the record before us.

We may observe, however, that it appears that the non-consenting holders of bonds, throughout all the proceedings relative to the indebtedness of the Village, from the inception of the voluntary plan to the time of final decree on the petition for confirmation of the plan as a composition of debt, have refused to cooperate with the Village or with the more than 95% of the bondholders similarly placed. Instead, they have held back and sought on every occasion to obtain and hold, by action or inaction, an advantage over the other bondholders, although they had, by virtue of their holdings, no superior claim to preferred treatment. This they had a right —a purely legal right—to do. But it was not equitable for them to profit at the expense of others in the same position and with the same rights, especially in view of the fact that it was through the activity and sacrifice and cooperation of the other bondholders, and the officials and taxpayers of the Village, that their own holdings were being protected, reinvigorated, and continually augmented in value. If all the bondholders had assumed the attitude of appellant, there could not have been any effective plan of composition of indebtedness entered into, under either state or federal law, and it is safe to say that in such a case, the net result would have been disastrous to all, including the non-consenting bondholders, instead of highly satisfactory from a financial standpoint, as disclosed by the actual event.

In view of the refusal of such bondholders to consent to the voluntary plan, thus necessitating a resort to the bankruptcy proceedings for the purpose of con-

firming the plan as a composition of indebtedness, and because of their opposition to these latter proceedings on technical grounds that have been adjudged unfounded, thereby causing the additional expense in such proceedings to be incurred, we cannot say that the district court's apportionment of the expenses was an unjust determination, within the intendment of the statute providing for such apportionment among the parties, "as may be just." Rather, we are of the opinion that the action of the court in this regard was in accord with equitable principles. Other claims of error have been considered, and found to be without merit.

The judgment and order of the district court are affirmed.